UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| OPERATIONS MANAGEMENT INTERNATIONAL, INC., | : | Case No. 1:05-cv-171 |
| | : | |
| | : | U.S. Magistrate Judge Timothy S. Black |
| Plaintiff, | : | |
| | : | |
| vs. | : | |
| | : | |
| CLERMONT COUNTY, OHIO, | : | |
| | : | |
| Defendant. | : | |

**MEMORANDUM OPINION AND ORDER**

This civil action is before the Court on cross motions for summary judgment (Docs. 15, 16 and 17) and responsive memoranda. The Court heard oral argument on November 6, 2006, and the motions are ripe for decision. The parties have consented to disposition by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Doc. 8.)

**I. BACKGROUND**

Plaintiff Operations Management International, Inc. ("OMI") is a Colorado corporation engaged in the business of providing and operating water treatment facilities and water distribution systems. (Doc. 1 at ¶ 1.) Defendant Clermont County ("the County") is a political subdivision of the State of Ohio. (*Id.* at ¶ 3.)

In August 1999, the County issued a Request for Bids ("RFB") for "Water Treatment, Wastewater Treatment, Water Distribution, Wastewater Collection and Customer Billing Services." (Doc. 15-3). In the RFB, the County provided a detailed Scope of Work describing the tasks to be performed annually by the successful bidder. Of special relevance to this case, the RFB reflected that the successful bidder would be required to install residential water meters at its expense. *See* Doc. 15-3, RFB, Art. III, Section D, at sub-sections 1 and 2(h), at pp. 22-23.[1]

In consideration of the services to be provided by the successful bidder, the RFB stated with respect to compensation, as follows:

> A. General. Contractors will receive an annual fee in compensation for the operation and maintenance of the Utilities. ... Contractors will receive no other compensation for the operation and maintenance of the Utilities except as approved by the County. *Id*. at Art. V, p. 36.

The RFB provided further that certain contingent adjustments to the annual fee would be built into the parties' agreement. *Id.,* Art. V, Section G, at p. 38.

Ultimately, OMI was the successful bidder on the RFB, and on February 10, 2000, the County entered into a five year contractual agreement (the "Operating Agreement") with OMI for the operation and maintenance of the County's water distribution system, water treatment facilities, and water and sewer billing services. (Doc. 1-2, Ex. A to Complaint, the "Operating Agreement.")

---

[1] "The scope of services includes ... meter reading and new service installations" (Doc. 15-3, RFB, Art. III, Section D, at sub-section 1, p. 22); ... and the Contractor "shall perform new water service installations." (Doc. 15-3, RFB, Art. III, Section D, at sub-section 2, h, at p. 23).

The Operating Agreement, which incorporated the RFB, provided with respect to Compensation for the Water and Billing Services, as follows:

> * * * * In exchange for the services to be provided by the Contractor hereunder, the County shall pay the Contractor an annual fee. The Annual Fee shall be the exclusive payment to the Contractor for performing the required services included in sections A, B and D of Article III of the RFB, except where explicitly noted otherwise.

(Doc. 1-2, Ex. A to Complaint, the "Operating Agreement," § 4.01, p. 10).

As in the RFP, the Operating Agreement provided for adjustments to the Annual Fee. Specifically, and as at issue herein, Section 4.02(e) of the Operating Agreement provided in relevant part that:

> If there is an increase of more than 10% in the total number of Water Customer Accounts due to the addition of newly constructed or acquired units, the Contractor shall be entitled to additional compensation in an amount equal to the actual, direct increase in costs to the Contractor associated with such an increase."

(Doc. 1-2, Ex. A to Complaint, the "Operating Agreement," § 4.02(e), p. 12.)

Alas, life did not go well between the parties, and on February 4, 2004, the parties agreed to terminate the Operating Agreement prior to the expiration of the original five-year period and executed a Mutual Settlement Agreement (the "Settlement Agreement"). (*See* Doc. 17-3.) Pursuant to the Settlement Agreement, OMI, was required, *inter alia*, to complete a final inventory reconciliation associated with its work for the County. (Doc. 1 at ¶ 14.)

Notwithstanding the parties' purported 2004 settlement, on March 17, 2005, OMI filed the present lawsuit alleging breach of contract and unjust enrichment on the grounds

3

that the County had failed to pay OMI the additional compensation contemplated under § 4.02(e) and had failed to pay amounts that OMI claims are due under the final inventory reconciliation. (*See* Doc. 1 at ¶¶ 16, 17, 21.) OMI seeks compensatory damages in excess of $1,200,000.00, plus interest. (*Id.* at ¶ A.)

On April 19, 2005, the County filed an answer, which included six counterclaims: (1) breach of contract; (2) conversion; (3) negligent misrepresentation; (4) fraud; (5) the termination agreement is void; and (6) breach of the termination agreement. (Doc. 6.) In support of its counterclaims, the County alleges, *inter alia*, that OMI failed to provide services under the Operating Agreement and failed to replenish the inventory at the end of the parties' relationship as required by contract. The County seeks unspecified compensatory and punitive damages.

On November 10, 2005, OMI filed a motion for partial summary judgment as to liability with respect to its breach of contract claim under § 4.02(e) of the Operating Agreement (*see* Doc. 12), as the County had stipulated that an increase of more than 10% in the total number of water customer accounts had occurred as of February 26, 2003, and had further stipulated that OMI is entitled to some amount of money under the relevant contractual provisions. (*See* Docs. 12-2, 13.) Accordingly, on January 9, 2006, the Court entered an Order granting OMI's motion for partial summary judgment – as to liability (but not yet as to damages). (Doc. 14.)

Subsequently, OMI has filed a motion for summary judgment on its claim for damages under the complaint (*see* Doc. 16), and the County has also filed a motion for

4

entry of summary judgment in its favor on the complaint and the sixth counterclaim, seeking dismissal of OMI's claims for damages (*see* Doc. 15.)  In a separately filed motion, OMI also seeks entry of summary judgment in its favor on each of the County's counterclaims.  (*See* Doc. 17).  Thus, the pending motions address all claims of both parties.

### III.  DISCUSSION

*A.    Standard of Review*

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56.  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex*, 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law.  In response to a summary judgment motion properly supported by evidence, the nonmoving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial.

*Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987).

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied,* 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson,* 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05.

    B.   *The Cross Motions for Summary Judgment As To the Claims Under § 4.02(e) of the Operating Agreement.*

The contractual provision which is the subject of OMI's breach of contract claim, § 4.02(e) of the Operating Agreement, provides as follows:

> <u>If there is an increase</u> of more than ten percent (10%) in the total number of Water Customer Accounts <u>due to the addition of newly constructed </u>or acquired <u>units</u>, the Contractor [OMI] shall be <u>entitled to additional compensation in an amount equal to the actual, direct increase in costs to the Contractor associated with such an increase</u>. ...
>
> The <u>Contractor shall have the burden of establishing that such an increase</u> in the number of Water Customer Accounts <u>due to the addition of newly constructed </u>or acquired <u>units resulted in additional actual, direct costs to the Contractor related to these units</u>. ...

(Doc. 1, Ex. A at p. 11.) (emphasis supplied by the Court).

The parties agree that, as of February 26, 2003, the total number of Accounts had increased by more than 10%, thereby triggering the application of § 4.02(e).

6

As a result, OMI contends that it is entitled to recover, as additional compensation under § 4.02(e), *all* of the actual Operation and Maintenance Costs which OMI incurred after that date. In response, the County asserts that OMI is not entitled to receive compensation for work for which it has already received compensation through payment of the Annual Fee (which includes the installation of meters).

The Court agrees with the County.

Pursuant to the parties' contract, OMI was required to install meters at its costs.[2] OMI sought to be relieved of this contractual obligation,[3] but failed to reach such an agreement of modification, and then settled with the County and agreed not to seek recovery for the cost of installing meters.[4]

---

[2] The Request for Bids provided that the successful bidder would be required to install the residential meters *at its expense*. (Doc. 15-3, Yaeger Aff., Ex. A, Art. III, D., 2., h (emphasis supplied)). The Operating Agreement provided that "[t]he Annual Fee shall be the exclusive payment to the Contractor for performing the required services included in Sections A, B and D of Article III of the RFB. (Doc. 1, Ex. A, Operating Agreement, § 4.01, p. 9 (emphasis supplied)). Thus, OMI was to pay for all water meters at its expense in consideration of its receipt of the Annual Fee.

[3] *See* 10/2/03 Letter of OMI requesting Scope Changes to the Operating Agreement such that the County would take on expenses for which OMI was responsible under the Operating Agreement including one that would "[a]dd language that makes the cost of materials related to new taps such as meters, copper, meter setters, crock and lid (approximately 1,100 installations per year) the responsibility of the County." *See* Doc. 15-7, Yaeger Aff., Ex. B.

[4] *See* Settlement Agreement at Section C, pp. 3-4: "Contractor will withdraw any claims relating to its demand for additional compensation or modification of the 2000 [Operating] Agreement.   ... Contractor agrees not to pursue any additional scope changes to the existing scope of services being provided to the County, unless mutually agreed to between the parties." (Doc. 6, Ex. 6, Settlement Agreement, Section C, pp. 3-4).

7

Nevertheless, if, after providing the required services for which the Annual Fee was compensation, OMI incurred <u>additional</u> costs caused by the increased size of the customer base, then OMI is entitled to compensation under § 4.02(e). Thus, for example, if the increased size of the customer base resulted in OMI having to read more meters, send out more bills, or respond to more customer calls, those would be costs directly resulting from and related to the increased size of the customer base. However, the increased size of the customer base did not require OMI to install meters in numbers beyond its contractual obligation. Thus, while the additional compensation clause in § 4.02(e) provides for payment of the costs associated with servicing the increased customer base (*i.e.*, "additional actual direct costs related to those units"), § 4.02(e) does <u>not</u> entitle OMI to compensation for work for which OMI has already been compensated through its Annual Fee (*e.g.*, installation of water meters).

Accordingly, plaintiff's motion for summary judgment on count 1 of its complaint seeking simply to recover *all* expenses "incurred after" the 10% increase is not well-taken and is denied.

Plaintiff is entitled to judgment for the additional costs "associated with" the 10% increase in the customer base but not yet already paid for via the Annual Fee, and, accordingly, OMI is directed to file forthwith a motion for summary judgment which identifies and quantifies such "additional actual direct costs" but which does not include services within the Operating Agreement's scope of services which have already been paid for via the Annual Fee.

8

*C. Plaintiff's Motion for Summary Judgment on Defendant's Counterclaims for Negligent Misrepresentation and Fraud [Counts 3 and 4].*

OMI also seeks judgment against defendant on its counterclaims for negligent misrepresentation and fraud. Without identifying any specific false or misleading statements, the County has asserted counterclaims against OMI for negligent misrepresentation and fraud.

To assert a viable claim for negligent misrepresentation, the County must demonstrate that OMI, in the course of its business, supplied false information to the County, which false information the County justifiably relied upon to its detriment. Similarly, to assert a viable claim for fraud, the County must demonstrate that OMI falsely made a representation of material fact upon which the County justifiably relied to its detriment.

The County has not identified any such misrepresentation, and, with regard to the fraud claim, the County has failed to plead the fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure.

Accordingly, the County's claims for negligent misrepresentation and fraud are not well-taken, and summary judgment is entered against the County on these claims.

*D. The Issues Relating to the Inventory Reconciliation.*[5]

Both parties claim entitlement to judgment on the issues relating to the inventory reconciliation.

With respect to the inventory, the 2000 Operating Agreement provided:

> At the Termination Date [of the Operating Agreement], the Contractor shall replenish the inventory and transfer that Ending Inventory to the County. The Contractor shall ensure that the value of the Ending Inventory is at least equal to the value of the Beginning Inventory, adjusted for inflation.

*See* Doc. 1., Ex. A, Operating Agreement, § 8.02, p. 22.[6]

Plaintiff claims that the County owes $15,000 relating to the inventory reconciliation because OMI claims to have increased the value of the inventory by that amount. Defendant claims that OMI owes it $346,000 (or perhaps $226,000) relating to the inventory reconciliation because the County claims that OMI left the inventory short by that amount.

OMI suggests that the difference in the parties' calculations is driven by a

---

[5] Before reaching the merits of the cross dispositive motions as to the issues relating to inventory reconciliation, the Court must address OMI's motion to strike the County's Exhibit A-2. OMI claims that consideration of the exhibit violates Fed. R. Evid. 408 because the document was generated solely as a result of settlement negotiations. Rule 408 proves in relevant part that "[e]vidence of conduct or statement made in compromise negotiations is . . . not admissible." Here, the County does not dispute that the document was generated as part of settlement negotiations and, in fact, the County did not file any memorandum *contra* the motion to strike. Accordingly, for good cause shown, the motion to strike (Doc. 21) is **GRANTED**.

[6] The Request for Bid, incorporated by reference into the Operating Agreement, likewise provided that: "At the end of the contract period, the inventories shall be replaced by the contractor at its expense." Doc. 15-3, Yaeger Aff., Ex. A, RFB, Art. III, H.6, page 33. And the parties' Settlement Agreement also references OMI's responsibility to replenish the inventory at the end of the relationship. See Doc. 6, Ex. 6, Settlement Agreement, § D, ¶ 5.

differing interpretation as to whether "Equipment" was to be included in the inventory.[7]

The Operating Agreement defines "Beginning Inventory" as a specifically defined term which consists of "[t]he spare parts, tools, furniture, devices, materials, and supplies at the Utilities on the Effective Date that [OMI] will use to fulfill this Agreement." The term "Equipment" is not included within the definition of Beginning Inventory. Likewise, the Operating Agreement defines "Ending Inventory" as "[t]he spare parts, tools, furniture, machinery, devices, materials and supplies at the Utilities on the Termination Date that [OMI] provides to the County." Again, the term "Equipment" is not included in the definition of "Ending Inventory."

In order to resolve the issue of the competing determinations of the inventory obligations, there must be a determination as to whether the items the County seeks OMI to replenish are "spare parts, tools, furniture, machinery, devices, materials and supplies." The Court believes that such a determination may be made upon the undisputed facts, but the Court requires more specific, factual briefing on this issue for clarification. Accordingly, each party shall file forthwith a motion for partial summary judgment as to the inventory reconciliation including a demonstration how the items it seeks to include as replenishment of inventory are "spare parts, tools, furniture, machinery, devices, materials and supplies."

---

[7] The Operating Agreement defines "Equipment" as: "All vehicles, machinery, structures, components, parts, devices, and instrumentation, both fixed and portable, and materials contained within or located at the Utilities that are utilized in the operation and maintenance of the Utilities." § 1.18, p. 4. OMI also argues that "Equipment" is not addressed through inventory reconciliation but through application of the minor corrective maintenance fund (citing § 1.10 of the Operating Agreement).

*E. The County's Counterclaims for Breaches of Contracts.*

The balance of OMI's motion for summary judgment against the County on its counterclaims for breaches of contracts (Doc. 17 at Counts 1, 5 & 6) will remain pending for adjudication as the Court continues to consider, *inter alia*, whether the County has waived these claims by not raising them until, for the very first time, upon the filing of its counterclaim.

### IV. CONCLUSION

OMI is only entitled to recover compensation for additional costs "associated with" the 10% increase in the customer base, and OMI is not entitled to recover for costs for which it has already been compensated via the Annual Fee provisions of the Operating Agreement . Accordingly, Plaintiff's motion for summary judgment (Doc. 16) on its breach of contract claim under § 4.02(e) is denied; however, the Court finds that the OMI's claim for $312,249.81, plus interest, from the County for unpaid invoices is well-taken. Moreover, for the reasons stated herein, most specifically at page 8 *supra*, Defendant's motion for summary judgment (Doc. 15) is also hereby denied.

OMI's motion for summary judgment on the County's counterclaims (Doc. 17) is granted in part, and held in abeyance in part; to wit:

The County's claims for negligent misrepresentation and fraud are dismissed;

The inventory reconciliation issue requires further briefing on the facts, as ordered at p. 11, *supra*.; and

The balance of OMI's motion for summary judgment on the counterclaims for breaches of contracts (Counts 1, 5 & 6) also remains pending for adjudication.

**WHEREFORE**, in light of the foregoing resolutions, and the prospective pleadings ordered by the Court, the trial date of December 5, 2006 is hereby **VACATED**, and the Court awaits the parties' further pleadings.

**IT IS SO ORDERED**.

Date:  11/13/06                           s/Timothy S. Black
                                                                              Timothy S. Black
                                                                              United States Magistrate Judge